
Marc J. Randazza, AZ Bar No.: 27861
Ronald D. Green (*Pro Hac Vice*)
RANDAZZA LEGAL GROUP, PLLC
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for Plaintiff,
AMA Multimedia LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> John Does 1-25, and Roe Corporations 26-50 <br><br> Defendants. | Case No. 2:15-cv-01674-ROS <br><br> **MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiff AMA MULTIMEDIA, LLC ("AMA") hereby requests that this Court issue an *ex parte* Temporary Restraining Order and, subsequently, a preliminary injunction restraining Defendants' assets from the websites located at <eporner.com>, <epornergay.com>, and <eprncdn.com> pursuant to 17 U.S.C. § 502 and Rule 65 of the Federal Rules of Civil Procedure. If Defendant's operations are not frozen, they will dissipate those assets and/or transfer them outside the jurisdiction of this Court (and likely outside the United States), leaving Plaintiff with no adequate remedy at law. Plaintiff can show likelihood of success on its copyright and

trademark claims, irreparable harm from Defendants' infringement, and the public interest would not be disserved by issuance of an injunctive order.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0 INTRODUCTION**

Plaintiff AMA is a producer and distributor of adult entertainment online. Defendants are owners and operators of websites located at the <eporner.com>, <epornergay.com>, and <eprncdn.com>, which unlawfully display the copyrighted content and registered trademarks without permission of the owners, including Plaintiff. Defendants profit from stolen content uploaded by themselves and their users, and thereby have irreparably and irreversibly harmed AMA by decreasing the value of its content in the marketplace.

Failure to enjoin Defendants and freeze their operations would permit Defendants to dissipate their assets or transfer their operations, or otherwise destroy or hide evidence of their widespread, intentional intellectual property infringement. This would leave Plaintiff AMA with no adequate remedy at law and necessitates equitable relief. Plaintiff requests this Court issue an *ex parte* temporary restraining order, which should be converted into a preliminary injunction until AMA obtains a judgment and permanent injunction at the conclusion of this case.

**2.0 STATEMENT OF RELEVANT FACTS**

**2.1 Plaintiff AMA Multimedia**

Plaintiff AMA Multimedia is a Nevada Limited Liability Company that produces high quality audiovisual erotic adult entertainment and distributes those works online to paid subscribers of its websites. (See Declaration of Adam Silverman, attached hereto as **Exhibit 1**, at ¶¶2-3.)

AMA's subscription-based websites issue login ID and passwords to paid subscribers after confirming that they are over 18 years of age. (See *id.* at ¶¶4-5.) Subscribers are then able to access secure portions of AMA's websites to view adult entertainment materials. (See *id.* at ¶5.) AMA owns online properties and brands protected by common law and federally registered trademarks including "Passion-HD" and "Massage Creep," among others. AMA maintains federally registered trademark rights in the marks:

   a. PASSION-HD.COM (registration number 4,190,291)
   b. PASSION-HD (registration number 4,251,457)
   c. PORNPROS (registration number 4,081,017)
   d. PORNPROS (registration number 3,566,875)
   e. PURE MATURE (registration number 4,453,271)
   f. POVD INNOVATIVE. CUTTING EDGE. A NEW PORN EXPERIENCE. (registration number 4,576,025)
   g. TINY4K.COM (registration number 4,678,642)
   h. FANTASYHD (registration number 4,591,117)
   i. EXOTIC4K.COM YOUNG EXOTIC GIRLS 4K ULTRA-DEF (serial number 86,425,774)

(See USPTO Registrations and corresponding assignments, attached hereto as **Composite Exhibit 2**).

Many of Plaintiff's audiovisual works have appeared on Defendants' websites without Plaintiff's permission. Such infringing works displayed on Defendants' websites additionally contain AMA's watermark wrongfully suggesting Plaintiff's endorsement of Defendants' website. (See **Exhibit 3**, Declaration of Trey Rothell, at *Exhibit A*, Representative Example of Plaintiff Video on EPorner Website).

### 2.2 Doe Defendants & Roe Corporations

Defendants are the registrants of the domain names <eporner.com>, <epornergay.com>, and <eprncdn.com>, and the owners of the EPorner website accessible through each of the domain names. (See **Exhibit 3** at *Exhibit B*, Front Page of EPorner Website). Defendants registered <eporner.com> on or about April 8, 2008. (See Whois Information for <eporner.com>, attached hereto as **Exhibit 4**.) The current registrar of <eporner.com> is Key-Systems GmbH, located in Sankt Ingber, Germany. (See *id.*) Defendants registered <epornergay.com> on or about August 27, 2013. (See Whois Information for <epornergay.com>, attached hereto as **Exhibit 5**.) The current registrar for <epornergay.com> is GoDaddy.com, LLC, located in Scottsdale, Arizona. (See *id.*) Finally, Defendants registered <eprncdn.com> on or about November 5, 2013, using domain name registrar GoDaddy.com, LLC, located in Scottsdale, Arizona. (See Whois Information for <eprncdn.com>, attached hereto as **Exhibit 6**.)

Defendants are aware they are using each domain name to infringe upon Plaintiff's rights and the rights of other content produces. Therefore, they have taken affirmative steps to hide both their identities and locations from the world, including but not limited to using privacy services for the registrations of the domain names. The <eporner.com> domain name is registered to Whoisproxy.com in Auckland, New Zealand, and <epornergay.com> is registered to Domains by Proxy in Scottsdale, Arizona. (See **Exhibits 4**, **5**, & **6**.) The <eprncdn.com> domain name is hosted by Leaseweb, headquartered in Amsterdam, Netherlands, with an office in Manassas, Virginia.

The EPorner website operates as an adult entertainment theater displaying audiovisual content created by Plaintiff and other content producers to its users free of charge and with no compensation to Plaintiff. (See EPorner Homepage, **Exhibit 3** at *Exhibit B*.) Defendants' profits and their website's popularity are specifically the result of the infringing content found on the site, including content belonging to Plaintiff. Videos displayed on the EPorner site bear the watermark of the content owner, including Plaintiff, side-by-side with EPorner's own watermark, improperly inferring that Plaintiff and other content owners endorse or are affiliated with EPorner. (See Video Screenshot, **Exhibit 3** at *Exhibit A*.)

Finally, EPorner, like many adult and non-adult websites, encourages its users to upload material to the site, similar to how YouTube operates. Most websites that permit user uploads require users to create an account and provide some type of personal information prior to uploading content.[1] Among other things, this assists the site in identifying users who are uploading infringing content. However, EPorner explicitly encourages its users to upload infringing material by advertising that users may upload and/or access content anonymously. (See EPorner Upload Page, **Exhibit 3** at *Exhibit F*.) With no fear of reprisals from intellectual property owners, EPorner and its users have transformed the site into a digital haven for infringers.

/ / /

/ / /

---

[1] *See e.g. Upload*, YouTube, youtube.com/# (last visited Sept. 3, 2015) (requires gmail.com login and creation of youtube account/google+ profile); XVideos, upload.xvideos.com/account/uploads/new (last visited Sept. 3, 2015) (requires xvidos.com account); Vimeo, vimeo.com/help/uploading (last visited Sept. 3, 2015) (requires login before uploading). (**Exhibit 3** at *Exhibits C, D,* and *E*.) *See also*, Flickr, www.flickr.com (last visited Aug. 19, 2015) (click Upload, log in to *Yahoo!*); CNN, ireport.cnn.com (last visited Aug. 19, 2015).

## 3.0 LEGAL ARGUMENT

### 3.1 Standard of Review

A temporary restraining order or preliminary injunction should be entered where plaintiff establishes: (1) likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) the balance of equities is in plaintiff's favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. (See *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).)

Pursuant to the U.S. Copyright Act, aggrieved copyright owners are entitled to, *inter alia*, the equitable relief of a seizure of the infringing defendant's profits and injunctive relief to prevent or restrain further infringement by the defendant. (See 17 U.S.C. §§ 502, 504.) Doman names are commonly proper objects of injunctive seizure. (See *Kremen v. Cohen,* 337 F.3d 1024, 1030 (9th Cir. 2003); see also *Office Depot, Inc. v. Zuccarini,* 596 F.3d 696, 701 (9th Cir. 2010).) In this instance, a temporary restraining order and/or preliminary injunction are necessary to stop Defendants' infringement, to stop Defendants from dissipating or moving their assets out of the Court's jurisdiction, and to prevent them from destroying any incriminating evidence after receiving notice of this lawsuit.

### 3.2 Plaintiff Is Likely to Succeed on the Merits of Its Claims

Plaintiff is likely to succeed on the Merits of its relevant claims for Copyright infringement under 17 U.S.C. §501, Contributory Copyright Infringement, Vicarious Copyright Infringement, Trademark infringement under 15 U.S.C. § 1114, and Unfair Competition under 15 U.S.C. § 1125(a). Plaintiff only need demonstrate likelihood of success on one relevant claim to be entitled to relief in the form of a Temporary Restraining Order and/or Preliminary Injunction.

Motion for *Ex Parte* TRO and Preliminary Injunction

### 3.2.1 Copyright Infringement

To prevail on a copyright infringement claim, plaintiff must show that: (1) it owns a copyright in the allegedly infringed work, and (2) the defendant copied with work without authorization. (See *Feist Pul'ns Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); see also *Shaw v. Lindheim*, 919 F.2d 1351, 1356 (9th Cir. 1990).)

Plaintiff AMA is the owner of registered copyrights on 22 works available on Defendants' website. (See List of Infringing Works, attached hereto as **Exhibit 7**.) Plaintiff has never given Defendants permission to use or provide access to those works on Defendants' website or anywhere else, nor has Plaintiff granted Defendants permission to copy these works.

Once plaintiff has established ownership of materials that have been copied or distributed without permission, plaintiff has established a *prima facie* case for copyright infringement. (See 17 U.S.C. §106; see also *Feist Publ'ns Inc.*, 499 U.S. at 361.) Because of the clear evidence Plaintiff AMA has provided showing copyright ownership and Defendant's unauthorized use and copying, Plaintiff has established a likelihood of success on their Copyright infringement claim.

### 3.2.2 Contributory and Vicarious Copyright Infringement

Defendants' are further liable for vicarious and contributory copyright infringement since Defendants have not designated a DMCA agent for service of process and therefore can be liable as an Internet service provider. (See 17 U.S.C. § 512(c)(2) (stating the limitations on liability permitted under the DMCA apply to service providers only if the service provider has a designated agent to receive service notifications of claimed infringements).) Defendants permit unidentified users to upload videos onto the EPorner website and thus should be aware that copyright

protected works, including Plaintiff's, would end up on their site. Absent DMCA protection, Defendants are liable for contributory copyright infringement based on the unauthorized uploads by their users. (See *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (holding "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement."))

Furthermore, Defendants have the capability to take steps to prevent or diminish the uploading of infringing videos on the EPorner website but failed to do so. Defendants' profited off user infringement, including infringement of Plaintiff's works, and are thus liable for vicarious copyright infringement. (See *Grokster*, 545 U.S. at 914 (holding one liable for vicarious copyright infringement where they profit "from direct infringement while declining to exercise the right to stop or limit it."))

Plaintiff is likely to succeed on the merits of its claim against Defendants for contributory and vicarious copyright infringement and thus injunctive relief should issue.

### 3.2.3 Trademark Infringement

Defendants will be found liable for Trademark Infringement where plaintiff can show (a) goods or services are involved; (b) interstate commerce is affected; and (c) there is a likelihood of confusion to current or potential consumers due to Defendants' infringement. (See 15 U.S.C. §§ 1444 & 1125(a).) Irreparable harm is presumed if Plaintiff demonstrates a likelihood of confusion. (See *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989).)

Defendants have profited off of the use of Plaintiff's copyrights and created consumer confusion by leaving Plaintiff's watermark with its trademarked logos on the infringing videos, available to its users.

Therefore a user would likely believe that Plaintiff endorsed Defendants use of their copyrighted works and in turn Defendants' website itself.

Courts determine likelihood of confusion by looking to certain factors including: (1) strength of plaintiff's trademarks; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) types of goods and consumer's degree of care; (7) defendants' intent; and (8) likelihood of expansion into the area of goods. (See *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).) Plaintiff's federal registrations constitute *prima facie* evidence of the validity and exclusive right to use the marks in commerce in connection with certain goods and services. (See *Coca-Cola Co v. Overland Inc.*, 692 F.2d 506, 509 (9th Cir. 1969).) Plaintiff uses its trademarks in connection with providing adult entertainment, in the form of their copyrighted videos, online. Defendants have used those same trademarks in congruence with distribution of the same goods. The marks Defendant has used are the exact marks belonging to Plaintiff. For these reasons and Defendant's blatant intention to use Plaintiff's trademarks and copyrighted works without permission constitutes Plaintiff's entitlement to injunctive relief.

### 3.2.4 Unfair Competition

The Lanham Act protection against unfair competition by "mak[ing] actionable the deceptive and misleading use of marks." *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 768 (1992). Plaintiffs registered marks enjoy "presumed source association . . . [and] qualify for protection under §41(a) without proof of secondary meaning." *Id*. at 772. Likelihood of confusion for a Lanham Act claim of unfair competition is the same for trademark infringement. (See 15 U.S.C. §1125 & 1127.) Accordingly, Plaintiff is likely to succeed on its claim.

### 3.3 Plaintiff Will Suffer Irreparable Harm Absent Equitable Relief

Irreparable harm exists where a plaintiff will suffer an injury that cannot be adequately redressed after the completion of a trial either legally or equitably. (See *Bethesda Softworks, LLC v. Interplay Entm't Corp.*, 452 App'x 351, 353 (4th Cir. 2011).) A company's loss of reputation, good will, and business opportunities amounts to irreparable harm. (See *Otsuka Pharm. Co. v. Burwell*, 2015 U.S. Dist. LEXIS 56344, *29 (D. Md. Apr. 29,2015).) While monetary damages may be available at law in copyright and trademark cases, equity compels a refusal to permit defendant from continuing infringing activities. (See 17 U.S.C. §504.)

Irreparable harm cannot be categorically presumed in intellectual property cases. (See *eBay Inc. v. MercExchange*, 547 U.S. 388 (2006).) Therefore Plaintiff shows irreparable harm whereby Plaintiff's property interest in its copyrighted works is compromised by Defendants' actions, and the possibility of market confusion amongst current and potential customers constitutes irreparable harm. (See *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146, 1190–91 (C.D. Ca. 2002).) Additionally, irreparable harm is satisfied because it is "notoriously difficult" to quantify potential lost sales as a result of infringement. (See *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971); see also *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1991).) Where copyrighted materials are "central to the essence of plaintiff's operations," their infringement enhances the irreparable nature of a plaintiff's harm. (See *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d at 1254; see also *Educational Testing Services v. Katzman*, 793 F.2d 533, 544 (3d Cir. 1986).)

Because Defendants' blatant infringement of Plaintiff's copyrighted works via unauthorized copying, distribution, and public display has caused irreparable harm to AMA this Court should issue injunctive relief.

### 3.4 The Balance of Equities Favors Injunctive Relief

This requested temporary restraining order is limited in scope. It merely prohibits Defendants from continuing use of the domain names <eporner.com>, <epornergay.com>, and <eprncdn.com>, and any associated websites to profit from infringement of Plaintiff's copyrighted works. Because Defendants' identities are unknown the only way to ensure that infringement ceases for the pendency of this action is to freeze any and all assets and domain names of any and all Defendants pending the outcome of this case.

Freezing Defendants' <eporner.com>, <epornergay.com>, and <eprncdn.com> domain names to prevent their transfer to another registrar or to a different registrant is also essential for Plaintiff to receive relief. Additionally, the preliminary injunction sought restrains Defendants from making further unauthorized copies of Plaintiff's works and from further distributing such pirated materials.

The requested injunctive relief seeks to require Defendants to comply with the U.S. Copyright Act, cease infringing upon Plaintiff's copyrighted materials, and to preserve the *status quo* throughout the pendency of this case. An imposition this may cause to Defendants' legitimate business activities (if any) is minimal and short-lived. Plaintiff's injury, and Defendants' continued infringement and potential to destroy evidence outweigh any possible damage caused to Defendants upon issuing injunctive relief.

/ / /

### 3.5 The Requested Relief Is In the Public Interest

Courts balance two competing public interests in deciding whether to issue a preliminary injunction in a copyright case: "the rights of users and the public interest in the broad accessibility of creative works, and the rights of copyright owners and the public interest in rewarding and incentivizing creative efforts." *WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012). There is a significant public interest in upholding copyright protections and preliminary injunctions serve that purpose. (See *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993); see also *Perfect 10, Inc. v. Cybernet Ventures, Inc.* 213 F.Supp.2d 1146,1191 (C.D. Ca. 2002).)

Federal copyright law furthers the public's interest in protecting business investment and intellectual property, and fostering creativity. There is no predominating public interested promoted by Defendants' infringement of AMA's copyrighted works.

### 3.6 *Ex Parte* Relief Is Essential

Federal Rule of Civil Procedure 65 permits issuance of a temporary restraining order without prior notice to Defendants. An *ex parte* order preserves the *status quo* and prevents irreparable harm. (See *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).) Courts grant temporary restraining orders when: (a) immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and (b) the applicant sufficiently demonstrates the reasons notice should not be required. (See FRCP 65(b)(1).) Courts often recognize the need for *ex parte* temporary restraining orders in intellectual property cases, especially in cases where defendants are unidentifiable at the time. (See *e.g. Bridals v. P'ships &*

Motion for *Ex Parte* TRO and Preliminary Injunction

*Unincorporated Ass'ns*, 2015 U.S. Dist. LEXIS 72511, *4 (W.D.N.C. June 3, 2015); *In re Vuitton Et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979); see also *Guggenheim Capital v. Birnbaum*, 722 F.3d 444, 447 (2d Cir. 2013); *NBA Properties v. Various John Does*, 113 F.3d 1246 (10th Cir. 1997); and see *American Can Company v. Mansukkhani*, 742 F.2d 314, 321 (7th Cir. 1984) (holding Rule 65 "expressly contemplates the issuance of *ex parte* temporary restraining orders").)

To obtain *ex parte* relief, a "Plaintiff need not show that a particular Defendant would not adhere to a temporary restraining order, but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity." *Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638 (E.D.N.Y. 1994); *see also First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 651 (6th Cir. 1998); *In re Estate of Ferdinand Marcos*, 25 F.3d 1467 (9th Cir. 1994).

Plaintiff has substantiated equitable remedies available under 17 U.S.C. §§ 502–505. Remedial and legal relief, however, will be unavailable if Defendants remove all property subject to Plaintiff's recovery beyond the reach of the Court. Prior notice would "render fruitless further prosecution of the action." *Vuitton*, 606 F.2d at 5.

Defendants' willful infringement of Plaintiff's copyrighted works make it critical that the Court order injunctive relief before Defendants have the opportunity to prevent Plaintiff's relief. Additionally, where danger of destruction or hiding evidence exists, the federal rules permit issuance of *ex parte* seizures and impoundment orders under cases such as this. (See *Laser Beat*, 859 F. Supp. at 638.)

///

### 3.7 Plaintiff Will Provide Adequate Security if Defendants Demonstrate Hardship

In the event that Defendants should prove hardship, they may propose a bond. "[T]he district court has the discretion to set the bond amount in such a sum as the court deems proper." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). However, if there is no evidence that the enjoined or restrained party will suffer material harm as a result of the injunction the court may set the bond amount at zero. (See *Connecticut General Life Ins. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).)

Defendants are unlikely to show any hardship suffered by issuance of an injunction. Injunctive relief would merely prevent Defendants from continuing illegal infringement activities. Additionally, "copyright infringement must not be allowed to serve as the cornerstone of a profitable business." *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *affirmed without opinion,* 168 F.3d 486 (5th Cir. 1999). Should the Court have trouble assessing the proper amount to which to set bond, it should hold an evidentiary hearing wherein Defendants are required to meet their evidentiary burden to prove hardship. A mere request for bond without sworn testimony specifically articulating alleged harm and an opportunity to cross-examine witnesses, should not be entertained.

### 4.0 DEFENDANTS SHOULD BE REQUIRED TO SHOW CAUSE

The requirements for a preliminary injunction are the same for a Temporary Restraining Order. (See *Walczak v. EPL Prolong. Inc.*, 198 F.3d 725, 731 (9th Cir. 1999).) Plaintiffs have overcome the burden to meet these standards. This Court should issue a show-cause order requiring

Motion for *Ex Parte* TRO and Preliminary Injunction

1 Defendants to demonstrate any countervailing argument as to why the
2 Court should not issue a preliminary injunction continuing the relief
3 granted in the TRO.

**5.0    CONCLUSION**

Defendants illegally copies, distributed, and publicly displayed copies of Plaintiff's copyrighted material for profit. Defendants additionally created a potential for consumer confusion as to their authority to display Plaintiff's works by infringing on Plaintiff's registered trademarks. Defendants' conduct is patently indefensible. These actions immediately and irreparably harm Plaintiff. Therefore the Court should grant Plaintiff's motions for a temporary restraining order and order to show cause. Plaintiff requests the Court grant these motions *ex parte* and without advance notice to Defendants to preserve the *status quo* and permit the Court to execute effective relief at trial.

Dated: September 3, 2015

                                      Respectfully Submitted,

                                      /s/ Marc J. Randazza
                                      Marc J. Randazza, AZ Bar No. 27861
                                      Ronald D. Green, *Pro Hac Vice*
                                      Randazza Legal Group, PLLC
                                      3625 S. Town Center Drive, Suite 150
                                      Las Vegas, NV 89135

                                      Attorneys for Plaintiff,
                                      AMA Multimedia, LLC