Marc J. Randazza, AZ Bar No.: 27861
Ronald D. Green, *Pro Hac Vice*
RANDAZZA LEGAL GROUP, PLLC
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Plaintiff,*
*AMA Multimedia LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MARCIN WANAT, a foreign citizen; John Does 1-25; and Roe Corporations 26-50,<br><br>Defendants. | Case No. 2:15-cv-01674-ROS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT MARCIN WANAT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

Plaintiff AMA Multimedia, LLC ("AMA") hereby opposes Defendant Marcin Wanat's Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion to Dismiss"). Defendant Wanat is subject to the jurisdiction of this Court pursuant to the Arizona long-arm statute and Federal Rule of Civil Procedure 4(k)(2).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0   INTRODUCTION**

Marcin Wanat is subject to the jurisdiction of this Court. In an effort to avoid jurisdiction and the imposition of an injunction, Wanat misrepresented how the EPorner site operates. Wanat misstates that all of the content on EPorner was hosted on the

<eporner.com> domain name, which he claims he does not own. Regardless of whether he is the registrant of that domain name (Plaintiff continues to suspect that he is), the videos on EPorner were actually hosted on the <eprncdn.com> domain, which resided in the State of Arizona and he admittedly owns. This fact alone provides the State of Arizona with specific jurisdiction over Wanat. Moreover, pursuant to Fed. R. Civ. P. 4(k)(2), Wanat is subject to jurisdiction in any federal court in this country. After all, Wanat clearly courted American viewers to the EPorner site and used a domain name residing in the U.S. to infringe upon the intellectual property of U.S. entities. His Motion to Dismiss must be denied.

## 2.0     STATEMENT OF RELEVANT FACTS

### 2.1     Plaintiff AMA Multimedia, LLC

Plaintiff AMA is a Nevada limited liability company. It produces adult entertainment films and distributes those films to paid subscribers of its websites and licenses them for distribution by other companies. (*See* Declaration of Adam Silverman, attached hereto as **Exhibit 1**, at ¶¶2-3) AMA's subscription based websites issue login IDs and passwords to paid subscribers after confirming that they are at least 18 years of age. (*See id.*, at ¶4.) AMA does not distribute its full-length videos for free on any website and does not authorize any other website to display its full videos free of charge. (*See id.*, at ¶¶5-6.) AMA owns online properties and brands protected by common law and has federally registered trademarks for those brands.

### 2.2     Defendant Marcin Wanat

One of the unfortunate byproducts of the high quality of Plaintiff's works is that they are prime targets for intellectual property thieves seeking to unlawfully profit from Plaintiff's copyrights and trademarks. Defendant Marcin Wanat is one of those individuals. He operates EPorner, which unlawfully displays the content of Plaintiff AMA and countless

other adult entertainment companies. Mr. Wanat knows that consumers are not likely to pay AMA for something they can get for free from EPorner, attracting visitors and advertisers to the site.

Mr. Wanat is the admitted registrant of the domain names <epornergay.com> and <eprncdn.com>, and the suspected registrant of <eporner.com>. Mr. Wanat is an admitted employee of EPorner. (*See* Motion to Dismiss, at 16 & 23.) However, he is most likely its owner. At the very least, he is in control of the <eporner@eporner.com> email address and has the ability to control the content on the site. (*See* Silverman/Wanat Email, attached hereto as **Exhibit 2**.)

Mr. Wanat claims to be a resident of Poland. However, EPorner is in no way targeted to a Polish audience. In fact, its largest audience is located in the United States.[1] (*See* Alexa Ranking for <eporner.com>, attached hereto as **Exhibit 3**.) Indeed, the U.S. has nearly twice as many visitors as the country that gives EPorner its second highest traffic. (*See id.*)

Plaintiff initially filed this suit against Doe and Roe Defendants because Wanat and his co-Defendants (if any) took steps to hide their identities, presumably because they preferred to avoid consequences for their actions. After Plaintiff AMA sought early discovery, Mr. Wanat learned of the lawsuit from GoDaddy, the registrar for the <epornergay.com> and <eprncdn.com> domain names at the time the Complaint was filed. After GoDaddy informed him of the subpoena seeking his registration information, Wanat immediately transferred the <epornergay.com> and <eprncdn.com> domain names out of the State of Arizona (and out of the United States), where they previously resided and

---

[1] One suspects that the U.S. would have an even higher percentage of EPorner's visitors if Mr. Wanat had not blocked residents of the States of Arizona and Nevada from viewing the site in a cynical attempt to keep the Plaintiff and the Court from reviewing the site. This block only came into effect when Wanat was made aware of this lawsuit.


other adult entertainment companies. Mr. Wanat knows that consumers are not likely to pay AMA for something they can get for free from EPorner, attracting visitors and advertisers to the site.

Mr. Wanat is the admitted registrant of the domain names <epornergay.com> and <eprncdn.com>, and the suspected registrant of <eporner.com>. Mr. Wanat is an admitted employee of EPorner. (*See* Motion to Dismiss, at 16 & 23.) However, he is most likely its owner. At the very least, he is in control of the <eporner@eporner.com> email address and has the ability to control the content on the site. (*See* Silverman/Wanat Email, attached hereto as **Exhibit 2**.)

Mr. Wanat claims to be a resident of Poland. However, EPorner is in no way targeted to a Polish audience. In fact, its largest audience is located in the United States.[1] (*See* Alexa Ranking for <eporner.com>, attached hereto as **Exhibit 3**.) Indeed, the U.S. has nearly twice as many visitors as the country that gives EPorner its second highest traffic. (*See id.*)

Plaintiff initially filed this suit against Doe and Roe Defendants because Wanat and his co-Defendants (if any) took steps to hide their identities, presumably because they preferred to avoid consequences for their actions. After Plaintiff AMA sought early discovery, Mr. Wanat learned of the lawsuit from GoDaddy, the registrar for the <epornergay.com> and <eprncdn.com> domain names at the time the Complaint was filed. After GoDaddy informed him of the subpoena seeking his registration information, Wanat immediately transferred the <epornergay.com> and <eprncdn.com> domain names out of the State of Arizona (and out of the United States), where they previously resided and

---

[1] One suspects that the U.S. would have an even higher percentage of EPorner's visitors if Mr. Wanat had not blocked residents of the States of Arizona and Nevada from viewing the site in a cynical attempt to keep the Plaintiff and the Court from reviewing the site. This block only came into effect when Wanat was made aware of this lawsuit.

further instituted a geo-block to stop any Arizona or Nevada Internet connections from being able to view EPorner. (*See* DE 14-7.) Wanat did not block any other geographic areas – only the states where the Court, Plaintiff, and Plaintiff's counsel are found. His motivation for these actions requires no speculation. His conduct resulted in the Court issuing a TRO, which should now be converted to a Preliminary Injunction until this case concludes with the issuance of a Permanent Injunction.

### 2.3   Wanat's Conduct Since Issuance of the TRO

As noted in the Motion for TRO, the Motion for Alternate Service, and above, since the issuance of the TRO, Wanat's efforts with regard to this lawsuit have been almost exclusively focused on attempting to defeat jurisdiction after the fact. Wanat immediately blocked Arizona and Nevada residents from viewing the site. This not only frustrates Plaintiff's attempts to monitor infringements, it allows him to argue that Arizona and Nevada would be inappropriate venues since the sites are no longer accessible there. He transferred the <epornergay.com> and <eprncdn.com> domain names away from Arizona-based registrar GoDaddy to a European registrar. This was clearly an attempt to try to remove the strong Arizona nexus from this case. However, it was also done to frustrate the Court's ability to enjoin his unlawful conduct, as an Arizona registrar is guaranteed to comply with an order from this Court, while a registrar in Luxembourg might not. This Court will have the ability to enjoin further infringements if the relevant domains (through which all the infringing materials passed) are under its jurisdiction – as they were on the day the suit was filed. Moving the domains to Luxembourg means that the court can issue orders, but has no way to ensure their compliance unless it depends upon Wanat's goodwill – goodwill he has squandered thus far.

As soon as he learned of this suit, Wanat could have taken immediate steps to end his infringing activities. He did not. Instead, he simply stopped directing Internet users to EPorner when they visited <epornergay.com> and <eprncdn.com>. Now, those domains lead to generic traffic pages. Presumably, Wanat did this so that he could disingenuously argue in his Motion to Dismiss that the <epornergay.com> and <eprncdn.com> domains "merely redirect users to the domain eporner.com. **The domains themselves are passive, containing no content**." (Motion to Dismiss, at 2 (emphasis added).) Unfortunately for Mr. Wanat, this statement is simply not true and appears to be an intentional misrepresentation to this Court.

Prior to this litigation, all of the videos associated with the EPorner website loaded from the <eprncdn.com> domain name, not <eporner.com>. (*See* Declaration of Trey A. Rothell ["Rothell Decl."], attached hereto as **Exhibit 4**.) Therefore, all of Mr. Wanat's infringements of Plaintiff's intellectual property emanated from his asset in the State of Arizona – the <eprncdn.com> domain. As evidence, Plaintiff has attached and highlighted the source code for a representative sampling of the infringing videos that were on EPorner when the initial Complaint was filed on August 24, 2015.[2] (*See* Source Code for AMA Videos on EPorner, attached hereto as **Exhibit 4** at *Exhibit C*.) The source code clearly shows the videos loading from the <eprncdn.com> domain name and not the <eporner.com> domain name.

Like Defendant's other actions following his discovery of this lawsuit, he moved the videos from <eprncdn.com> to frustrate jurisdiction and the Court's practical ability to enjoin his infringing activity. However, the fact remains that Defendant:

- used an asset located in the State of Arizona;

---

[2] Plaintiff has produced a representative sampling so as not to burden this Court. If the Court desires to see the source code for all infringing videos, it is available on request.

- to unlawfully infringe the copyrights and trademarks of a company he knew was located in the United States;
- on the EPorner website, which has twice as many U.S. visitors than any other country.

There is no jurisdictional issue here.  The Motion to Dismiss should be denied, and a Preliminary Injunction should issue.

## 3.0    LEGAL ANALYSIS FOR MOTION TO DISMISS

### 3.1    Standard of Review

To support personal jurisdiction, the plaintiff must only "'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).  When considering the jurisdictional issue, the court "resolves all disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

Generally, personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and does not violate federal due process. *See Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996).  Here, both the Arizona long-arm statute (Ariz. R. Civ. P. 4.2(a)) and Fed. R. Civ. P. 4(k)(2) apply.  While Wanat spends a significant amount of time arguing against Arizona jurisdiction, he largely declines to address Fed. R. Civ. P. 4(k)(2), which affords jurisdiction over a foreign defendant, treating the entire United States as one "state" for jurisdictional purposes. *See Unocal*, 248 F.3d at 922 (employing Rule 4(k)(2) as a federal long-arm statute).  Due process under both statutes is satisfied for a non-resident defendant if he has "minimum contacts" with the forum such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

### 3.2 Wanat is Subject to Jurisdiction in the State of Arizona

#### 3.2.1 Wanat has the required minimum contacts.

Courts within the Ninth Circuit employ a 3-part test to determine whether the requisite minimum contacts exist:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum; (2) the claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.

*Caddy*, 453 F.3d 1151, 1155 (*quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). The burden is on the plaintiff to establish the first two prongs. *See Bancroft*, 223 F.3d at 1089. If it does so, the burden shits to the defendant to show that exercise of jurisdiction is unreasonable. *See id.* In the instant case, an application of these 3 factors clearly indicates that this Court has specific jurisdiction over Mr. Wanat with regard to Plaintiff's claims against him.

#### 3.2.2 Purposeful Availment and/or Purposeful Direction

In order to satisfy the first prong of the minimum contacts test, AMA must demonstrate that Wanat has either "(1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities toward the forum."[3] *Caddy*, 453 F.3d at 1156 (*citing Schwarzenegger v. Fred Martin Motor Car Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). In this instance, the "purposeful availment" requirement subjects

---

[3] In his Motion to Dismiss, Wanat argues that the purposeful availment test is used in contract cases and the purposeful direction test is used in tort cases. (*See* Motion to Dismiss, at 7.) However, the case that Wanat cites for that proposition specifically holds that the plaintiff may show either purposeful availment or purposeful direction to satisfy the first prong of the minimum contacts test. *See Schwarzenegger*, 374 F.3d at 802. Additionally, the claims asserted in the *Caddy* case were Lanham Act claims, and that court additionally stated that either test was appropriate.

1  Defendant Wanat to specific jurisdiction in the State of Arizona. The "purposeful direction"
2  requirement, as will be discussed below, subjects Defendant to jurisdiction pursuant to Rule
3  4(k)(2). Plaintiff must only show one, Arizona long arm, or Rule 4(k)(2) for jurisdiction to
4  attach. However, both are present and proper.

5  To satisfy the "purposeful availment" requirement, the defendant must have
6  "performed some type of affirmative conduct which allows or promotes the transaction of
7  business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008). The
8  formation of a contract alone with a resident of the forum is typically not enough to subject
9  the non-resident defendant to jurisdiction in the forum; there must be something more, such
10 as ongoing business activities in the forum. *See id.*

11 In this case, there is "something more." In fact, there is "much more." Wanat's
12 contract with the registrar might not ordinarily be enough to establish jurisdiction over
13 Wanat. However, his contract with GoDaddy has a forum selection clause that clearly
14 mandates jurisdiction in the State of Arizona. GoDaddy's Universal Terms of Service
15 provide that:

> any action relating to or arising out of this Agreement shall be brought in the state or federal courts of Maricopa County, Arizona, and you hereby consent to (and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to) jurisdiction and venue in the state and federal courts of Maricopa County, Arizona.

19 (*See* GoDaddy Universal Terms of Service, attached as **Exhibit 5**, at ¶25.) The language of
20 this forum selection clause is nearly identical to the one at issue in *Liberty Media Holdings,*
21 *LLC v. Vinigay.com*, 2011 U.S. Dist. LEXIS 153615, *33 (D. Ariz. Dec. 27, 2011), where the
22 court found personal jurisdiction (in a copyright infringement case with extremely similar
23 facts) by virtue of the registrant defendant's registration of a domain name with an Arizona
24 registrar. *See id* (finding that registrant had consented to Arizona jurisdiction by virtue of

forum selection clause in the domain registration agreement).  This suit is not so unrelated to the GoDaddy agreement so as to make this provision irrelevant, either; the terms of use require a registrant to agree that he "will not use this Site or the Services in a manner . . . that . . . [i]nfringes on the intellectual property rights of another User or any other person or entity."  (**Exhibit 5** at ¶5.)  Defendant breached this agreement by committing copyright and trademark infringement, and thus is bound by the agreement's forum selection clause.

However, even in the absence of a forum selection clause, Wanat still used an Arizona-located asset as the key piece of equipment required to engage in widespread intellectual property infringement to the detriment of Plaintiff AMA and dozens of other American intellectual property owners.  *See Kremen v. Cohen,* 337 F.3d 1024, 1030 (9th Cir. 2003) (holding that domain names are property and are subject to a court's jurisdiction).  An asset located in Arizona was the vehicle for Mr. Wanat's infringement, which constituted "ongoing business activities" in the state.  After all, he registered the <eprncdn.com> domain name in 2013 and used it to host the videos on the EPorner site until late 2015.  (*See* Whois Result for <eprncdn.com>, attached hereto as **Exhibit 6**.)

The Internet has been analogized to an "information superhighway."  Using this imagery, the Court should picture Wanat running a rail line through the center of Phoenix, where he had a warehouse filled with stolen goods.  That is what the <eprncdn.com> domain name was – the warehouse full of stolen movies.  When Wanat found out that there was going to be a raid on his warehouse, he immediately packed it up and moved it to Luxembourg, covering up the spur coming from Phoenix with a thin layer of sand, hoping that the Court would not notice.

Through his Motion to Dismiss, Wanat asks the Court to disregard that he used an Arizona-based asset to commit large-scale intellectual property infringement for years.

When he discovered the existence of this suit, he hastily attempted to cover his tracks. However, he cannot reverse course now to avoid jurisdiction. He intentionally registered a domain name with an Arizona registrar for the purposes of posting stolen content. Arizona is the proper forum for this dispute.

### 3.2.3   Defendant's Forum Related Activities

With the true extent of Wanat's involvement with EPorner established, it is obvious that his contacts with the U.S. are a "but for" cause of AMA's claims. *See Ziegler v. Indian River Cty.*, 64 F.3d 470, 474 (9th Cir. 1995), and thus AMA's suit arises from his forum-related activities. He registered a domain name with an Arizona registrar, then used that Arizona asset to host and distribute infringing videos displayed on the EPorner website.

As for Wanat's attempt to analogize *Inter123 Corp. v. Ghaith*, No. 2:14-cv-00463 case on the second prong of this analysis, the facts here are readily distinguishable. *Ghaith* was a breach of contract action arising from a failure to transfer a domain name during a purchase with the 3rd party intermediary Sedo.com. *See Ghaith* at 4. The court noted that the sales contract had nothing to do with GoDaddy or its terms of service. *See id.* In contrast, Wanat registered the <eprncdn.com> domain name with GoDaddy and then used it to host infringing content, in violation of GoDaddy's terms of service. The facts here are much closer to those in *Vinigay.com*, 2011 U.S. Dist. LEXIS 153615 at *33. The court there found that jurisdiction was proper over the registrant of a domain name confusingly similar to the plaintiff's because the registrar's registration agreement had a forum selection clause nearly identical to GoDaddy's. *See id* (finding that registrant had consented to Arizona jurisdiction by virtue of forum selection clause). Thus, aside from Wanat's conduct in Arizona constituting "but for" causation, he has also consented to jurisdiction in the State of Arizona.

### 3.2.4   This Court's exercise of jurisdiction over Wanat is reasonable

In arguing that this Court's exercise of jurisdiction over him would be unreasonable, Wanat cites to the seven factors enumerated in *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  In applying this analysis, he misrepresents the extent of his contacts with Arizona.  He did not merely register a passive domain name with a registrar in the state; he used that domain name to commit massive, systematic copyright infringement of AMA's works and the works of other content producers.  His relationship with GoDaddy is thus central to the suit, rendering irrelevant his lack of any other assets in the state.  Furthermore, he entered into an agreement with GoDaddy specifying jurisdiction in this state. *See Vinigay.com*, 2011 U.S. Dist. LEXIS 153615 at *33.

This state also has an interest in adjudicating this dispute; Arizona does not wish to let copyright infringement using companies and assets located within it to go unpunished. The Court should not give particular weight to any claimed inconvenience on the part of Wanat, either.  "Modern advances in communications and transportation have significantly reduced the burden of litigating in another country."  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).[4]  This suit arises from his use of an Arizona asset to infringe copyrighted works registered in the U.S.

### 3.3   Alternatively, Wanat is Subject to This Court's Jurisdiction Under FRCP 4(k)(2)

Fed. R. Civ. P. 4(k)(2) provides that, for a claim arising under federal law, service on a defendant establishes personal jurisdiction if: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  *See Getz v. Boeing*, 654 F.3d 852, 858-59 (9th Cir.

---

[4] One can only assume that the expense of international litigation has only lessened in the 27 years since *Sinatra*.

2011); *see also Elan Microelectronics Corp. v. Pixcir Microelectronics Co.*, 2012 U.S. Dist. LEXIS 19255, \*6 (D. Nev. Feb. 16, 2012).  As Wanat correctly points out in his Motion to Dismiss, "[t]he due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, we consider **contacts with the nation as a whole**." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (emphasis added).  Wanat's arguments following this recitation of law, however, are based on misrepresentations to the Court and do not withstand scrutiny.

The first prong is easy to dispense with: AMA's claims arise under two federal statutes, the Copyright Act and the Lanham Act.  U.S. district courts have original jurisdiction over Lanham Act claims and exclusive jurisdiction over Copyright Act claims. *See* 28 U.S.C. § 1338(a).

### 3.3.1 If Wanat is Not Subject to Jurisdiction in Arizona Specifically, He is Beyond the Reach of Any State Court of General Jurisdiction

AMA discusses in Section 3.2, *supra*, why Defendant is subject to personal jurisdiction in the State of Arizona.  If the Court disagrees with AMA, however, then there is no individual state with which Defendant has sufficient minimum contacts.  To AMA's knowledge, he does not currently own any other property or assets located in the United States, nor does AMA have any evidence of commercial or other activity specifically directed to any given state more prominently than Arizona.

Had Defendant acknowledged the applicability of Rule 4(k)(2), he could have argued that jurisdiction may be proper in another state.  The rule allows a foreign defendant to concede jurisdiction in an alternate state, with the plaintiff then having to support his chosen forum.  It is the defendant's burden to establish an alternative forum, and the mere possibility that another state may be more appropriate is of no effect if the defendant does

not request a different venue.  *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).  Defendant has not done this, waiving his ability to concede jurisdiction in another state.  Accordingly, if AMA can show that jurisdiction is proper in the United States under Rule 4(k)(2), then its choice of forum prevails.

### 3.3.2 Exercising Jurisdiction Over Defendant is Consistent With U.S. Law

As explained above, the 9th Circuit employs a three-part test to determine whether a court has personal jurisdiction over a defendant: (1) purposeful availment or direction; (2) "but for" causation as to the defendant's contacts; and (3) reasonableness.  *See Schwarzenegger*, 374 F.3d at 802.

Wanat claims that he does not have sufficient minimum contacts with any state in the U.S. because the domains he admits to registering, <epornergay.com> and <eprncdn.com>, "are only proxy domains, which are completely passive."  (Doc. 26 at 9.)  As already explained, however, this argument is based on a faulty factual premise.

#### 3.3.2.1 Wanat purposefully directed activity towards the United States

AMA's videos, as produced and distributed, display AMA's trademarks for identification and branding purposes.  (*See* Silverman Decl. at ¶6.)  Many of these marks are federally registered with the United States Patent and Trademark Office.  (*See* Doc. 10 at ¶11.)  The most cursory online search of the USPTO's database would reveal that AMA, a Nevada company, owned the content Wanat was infringing.  If Wanat did not affirmatively know the owner of the content he was infringing when he hosted it on <eprncdn.com>, he undoubtedly knew that it was not his and that posting it was unlawful.  After all, he took pains to hide his identity.  At best, he willfully ignored all available evidence as to AMA's ownership.

But aside from this, as already discussed above, Wanat either runs EPorner or has a significant degree of control over the website's operations. Wanat argues that these facts (*e.g.*, the suspiciously prompt removal of infringing content from <eporner.com>) are open to multiple interpretations, but all of the alternate interpretations he provides support a finding of personal jurisdiction over him. (*See* Doc. 26 at 15-16.) He either (1) tipped EPorner off about this suit and facilitated their destruction of evidence, entitling AMA to jurisdictional discovery as to the extent of his relationship with EPorner and degree of control over the website; (2) has a business relationship with EPorner, thus entitling AMA to jurisdictional discovery as to the extent of his relationship with EPorner and degree of control over the website; or (3) is an employee of EPorner, entitling AMA to jurisdictional discovery as to the extent of his job duties and involvement with EPorner's operations. AMA believes that the facts strongly support an inference that Wanat is the registrant (or at least the operator) of EPorner, but even Wanat's alternative interpretations do not support dismissal for lack of personal jurisdiction. Because of this, the content and characteristics of <eporner.com> are highly relevant in determining the extent of Wanat's ties to the U.S.

The number of visitors to a website from a particular forum is relevant to the express aiming inquiry. *See Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1230 (9th Cir. 2011). Courts in this district do not hesitate to subject a defendant to jurisdiction in the U.S. where that Defendant: (1) has contacts with the U.S., such as registrars or privacy services; (2) receives a "substantial amount of traffic from United States residents"; and (3) profits from advertising targeting U.S. residents. *Cybernet Entertainment, LLC v. IG Media, Inc.,* Case No. 2:12-cv-01101-SRB, Doc. # 32, at 14 (D. Ariz. Nov. 30, 2012); see *also Quokka Sports, Inc. v. Cup Int'l, Ltd.*, 99 F. Supp. 2d 1105, 1111 (N.D. Cal. 1999) (finding jurisdiction pursuant to

Rule 4(k)(2) where defendants used a U.S. registrar and featured advertising from U.S. companies on their website). Each of those factors is present here.

In this case, Defendant's express aiming is targeted to the U.S. as a whole. A large plurality of <eporner.com>'s visitors are from the U.S; 16.6% of its total visitors are from the country, while the runner-up, Germany, only accounts for 8.8% of the website's traffic. (*See* Alexa ranking report for <eporner.com>, attached as **Exhibit 3**.) Of the millions of websites located online, <eporner.com> is currently ranked 3,860 in overall traffic in the U.S. (*See id.*) The EPorner website is clearly directed at United States Internet users. The website is only displayed in English, regardless of the IP address a visitor uses. (*See* Rothell Decl., at ¶¶ 21-22.) The website invites users to become part of its affiliate program, which provides a monetary incentive to webmasters of "$5 per 1000 hits" for linking EPorner's videos on different websites. (*See* EPorner affiliate program page, attached as **Exhibit 7**.) Notably, this amount is in USD regardless of the IP address from which the site is accessed. (*See* Rothell Decl. at ¶¶ 21 & 23.)

EPorner's Terms of Service explicitly mention U.S. intellectual property laws, stating that "[t]he Content on the EPorner [sic] . . . are owned by and/or licensed to Eporner, subject to copyright and other intellectual property rights under **United States, Canada and foreign laws and international conventions**." (*See* EPorner Terms of Service, attached as **Exhibit 8**) (emphasis added).) Note that jurisdictions other than the United States and Canada are an afterthought in these terms. In fact, no other countries are even mentioned.

This Terms of Service provision shows an acute awareness of the applicability of U.S. law, and that the site's operators are primarily concerned with U.S. visitors and content owned by U.S. companies. All of the content on the site is in English and targeted to

American consumers.  It also demonstrates that, even if Wanat was not aware that AMA specifically owned the content he infringed, he was fully aware that it was owned by *someone* located in the United States.  Moreover, he misrepresented the existence of a license with AMA to viewers of his website, leading them to believe that he had a business relationship with AMA (and the other U.S. intellectual property owners he stole from).  These facts establish that EPorner and its services are directed primarily not just to English-speaking countries generally, but to the United States specifically.

In light of these facts, it is not credible to assert that a website with hundreds of thousands, if not millions, of U.S. visitors whose videos are **hosted by a domain name located in the U.S.** does not create sufficient minimum contacts with the country as a whole.  This also handily explains why Wanat was so quick to remove such a strong jurisdictional hook when he transferred registration of <eprncdn.com> overseas immediately upon learning of this lawsuit.

### 3.3.2.2   AMA's claims arise from Wanat's activities targeted at the U.S.

The second prong of the *Schwarzenegger* analysis is satisfied as to Rule 4(k)(2) for the same reasons it is satisfied for purposes of establishing Arizona's personal jurisdiction of Wanat, namely that he registered a domain name in the U.S. and used it to host infringing videos.  AMA's case under Rule 4(k)(2) is even stronger, however, as Wanat was heavily involved in the operations of the EPorner website, which is designed to attract U.S. visitors and U.S.-created content.  He knew or should have known that the infringing content he uploaded was owned by a U.S. entity.  Accordingly, his infringing activities directed towards the U.S. as a whole are the "but for" cause of AMA's suit.

/ /

/ /

### 3.3.2.3 This Court's exercise of jurisdiction over Wanat is reasonable

This Court's exercise of jurisdiction over Wanat is reasonable for the same reasons as discussed in Section 3.2, *supra*.  For Rule 4(k)(2) purposes, however, it is even more reasonable for a U.S. court to exercise jurisdiction over Wanat.  He operates a website that is designed to infringe content made by U.S. companies and attract U.S. visitors.  While he may live in Poland, Wanat has already displayed an acute awareness of a likelihood of being haled into court in the United States for violation of its intellectual property laws.  (*See* **Exhibit 8**.)  There is nothing unreasonable about making him appear in a U.S. court when he has targeted so much activity at the United States.

## 4.0 CONCLUSION

Wanat's use of the <eprncdn.com> domain name, an Arizona asset, to commit massive copyright and trademark infringement subjects him to specific jurisdiction in the State of Arizona.  Alternatively, he is subject to jurisdiction in any U.S. state for disputes relating to his operation of EPorner, which also renders Arizona an appropriate forum. Plaintiff AMA respectfully requests that the Motion to Dismiss be denied.

Dated: December 8, 2015            Respectfully Submitted,

*/s/ Marc J. Randazza*
Marc J. Randazza, AZ Bar No. 27861
Ronald D. Green, *Pro Hac Vice*
Randazza Legal Group, PLLC
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135

*Attorneys for Plaintiff,*
*AMA Multimedia, LLC*

Case No. 2:15-cv-01674-ROS

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 8, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

                                          Respectfully Submitted,

                                          Employee,
                                          Randazza Legal Group, PLLC