

1  **JAKUB P. MEDRALA, ESQ.**
   Pro Hac Vice
2  **SEAN L. AFRICK, ESQ.**
   Pro Hac Vice
3  **Donath & Medrala, Prof. LLC**
4  1091 S. Cimarron Road, Suite #A-1
   Las Vegas, Nevada 89145
5  (702) 475-8884
6  (702) 938-8625 Facsimile
   jmedrala@domelaw.com
7  safrick@domelaw.com
8  *Attorneys for Defendant Marcin Wanat*

9                  **UNITED STATES DISTRICT COURT**
10
11                    **DISTRICT OF ARIZONA**
12  AMA MULTIMEDIA LLC, a Nevada
    Limited Liability Company,                    CASE NO.: 2:15-cv-01674-ROS
13
14          **Plaintiff,**
15              vs.                      **DEFENDANT'S REPLY TO
                                         PLAINTIFF'S OPPOSITION TO
16                                       MOTION TO DISMISS FOR LACK
17  MARCIN WANAT, a Foreign Citizen;     OF PERSONAL JURISDICTION**
    JOHN DOES 1-25; and ROE
18  CORPORATIONS 26-50,
19
20          **Defendants.**
21
22
23         COMES NOW, Defendant MARCIN WANAT ("Wanat" or the "Defendant") by
24  and through his counsel of record, Donath & Medrala, Prof. LLC, and files his REPLY
25  TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR LACK OF
26  PERSONAL JURISDICTION.
27
28  / / /

                                    1

## REBUTTAL ARGUMENT

**I.   Wanat Is Not Subject to Arizona Jurisdiction.**

In its Opposition, the Plaintiff, AMA Multimedia, LLC ("Plaintiff" or "AMA") asserts that jurisdiction is proper in Arizona due to the Defendant's contact with the forum. The Plaintiff argues that the Defendant is subject to jurisdiction as a result of a forum selection clause in the GoDaddy registrar agreement (Exhibit A, p. 24), or alternatively, that jurisdiction is proper under the Ninth Circuit's purposeful availment test because of the Defendant's same lone contact with Arizona (agreement with GoDaddy), which gives rise to Arizona-based assets (the domains themselves) allegedly used for infringement activity. Neither argument is persuasive.

### a.   The Plaintiff Cannot Enforce the Forum Selection Clause as it Is Not its Intended Beneficiary.

"State law controls the question of the validity of a forum-selection clause." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 39 (1988) (Scalia, J., dissenting). Arizona courts have found that in order to enforce the terms of a contract, the parties must be in privity with one another. *See Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.*, 218 Ariz. 574, 575, 190 P.3d 733, 734 (2008). Without such privity, a party seeking to enforce a term of the contract must properly assert it is a third-party beneficiary to the contract. *Maricopa-Stanfield Irr. & Drainage Dist. v. Robertson*, 123 P.3d 1122, 1128 (Ariz. 2005) ("A third-party beneficiary is a non-party who has the right to enforce a contract.").

Arizona law states that a third-party beneficiary exists only when the contracting

parties intended "to directly benefit that person" and the contracting parties must "indicate that intention in the contract itself." *Sherman v. First Am. Title Ins. Co.*, 38 P.3d 1229, 1232 (Ariz. Ct. App. 2002). "[I]t is not enough that the contract may operate to the alleged third-party beneficiary's benefit but it must appear that the parties intended to recognize him as the primary party in interest and as privy to the promise." *Id.*

Per its terms, Arizona law applies to the GoDaddy agreement in question. The Agreement contains no indication that either GoDaddy or the Defendant intended to enter into the Agreement for the benefit of AMA (*See* Exhibit A, p. 24). There is no evidence that parties even knew or intended to recognize AMA "as a primary party in interest and as privy to the promise." There is not even any indication that the GoDaddy agreement was even intended to directly benefit any copyright holders in general. As a result, AMA cannot enforce the private agreement between Wanat and GoDaddy under Arizona law.

It should be noted that *Liberty Media Holdings, LLC v. Vinigay.com*, 2011 U.S. Dist. LEXIS 153615 (D. Ariz. Dec. 27, 2011), cited by the Plaintiff is not relevant to this inquiry. That case is distinguished by the fact that the jurisdictional analysis was *sua sponte*, as there never was an appearance or opposition by the Defendant, and the subject of third-party enforcement of the agreement was never broached by the court (and certainly not suggested by the Plaintiff). *Id.*

Importantly, however, the magistrate judge based its recommendation on the

holding in a prior case, where the GoDaddy agreement was much broader than what is alleged by the Plaintiff here. *Id.* at 17. The court noted that the clause at issue[1] was substantially identical to that of the GoDaddy agreement in the prior case. *Id.* Specifically, the clause stated:

> "[f]or the **adjudication of disputes concerning the use of any domain name registered with GoDaddy,** You agree to submit to jurisdiction and venue in the U.S. District Court for the District of Arizona located in Phoenix, Arizona." *Id.* at 17 (emphasis added).

Thus, the scope of the clause at issue in that case is much greater than the forum selection clause here that limits Arizona's jurisdiction to "any action relating to or arising out of this Agreement" (Exhibit C to the Motion, p. 8).

*Liberty Media Holdings* appears to apply to literally any adjudication related to the "use of the domain." There is no allegation here that the Defendant agreed to such a clause or that GoDaddy even uses this clause anymore. In fact, it is quite possible GoDaddy stopped using the clause because it is so overreaching.

**II.    The Facts Alleged by the Plaintiff in Support of Arizona Jurisdiction Are Best Analyzed Under a Purposeful Direction Analysis.**

The Plaintiff asserts that this Court may analyze jurisdiction under either a purposeful availment or purposeful direction standard. Finding the facts wanting in relation to purposeful direction, the Plaintiff eschews this analysis and impliedly insists that this Court do so. However, purposeful direction is clearly the proper framework for

---

[1] "[Y]ou agree that any action relating to or arising out of these Terms of Use shall be brought in the state or federal courts of Maricopa County, Arizona, and you hereby consent to jurisdiction and venue in the state and federal courts of Maricopa County, Arizona, and you hereby consent to (and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to) jurisdiction and venue in the state and federal courts of Maricopa County, Arizona. . . ." *Liberty Media LLC v. Vinigay.com* at 8.

4

analysis here, based on the facts cited by the Plaintiff.

Ninth Circuit courts have repeatedly stated that purposeful availment is generally used to determine jurisdiction when the claims are contractual in nature and that the purposeful direction test is suitable when the claims are tortious in nature. *See, e.g., Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

In intellectual property infringement cases, the Ninth Circuit has repeatedly used the purposeful direction test, rather than purposeful availment. *See, e.g., Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668 (2012); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). This is because purposeful availment inquires into contracts related to conducting business in the forum state and seeking the protections of that forum. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). A tortfeasor is presumably violating the laws and protections of the forum state rather than availing himself of these laws, so the inquiry turns on whether the harm resulting from the Defendant's acts was directed at the forum. *See Washington Shoe, Inc.*, 704 F.3d at 673-74.

Here, the Plaintiff admits that if it fails in its desperate attempt to enforce the forum-selection clause, then there must be "something more" asserted than the mere existence of the contract itself to support jurisdiction. Unfortunately, the "something more" is the Plaintiff's sensational allegations of rampant infringement, as well as colorful, but inaccurate, references to hypothetical trains carrying imaginary pornographic videos and whimsical raids on make-believe warehouses, using Arizona

REPLY TO MOTION TO DISMISS AND RESPONSE TO ORDER TO SHOW CAUSE

"assets."[2] (Dkt. No. 30, at 9).

These "assets," however, barely qualify as Arizona property. They certainly do not store content in Arizona (or anywhere else), and they do not facilitate the transaction of business in Arizona. Attempts at approaching an intangible Internet asset like a piece of real estate are simply attempts to fit a square peg into a round hole. While there is some minimal utility to approach, it ignores the reality of what domains actually are. The Plaintiff knows this and thus focuses on the Defendant's alleged infringing activities.

This reliance on infringement is precisely the reason why this Court must apply the purposeful-direction test here. The Plaintiff's allegations are based on infringement (tort), and there is only a tangential and attenuated relationship to Arizona business or contracts.

### a. The Plaintiff Has Alleged No Facts Which Would Support That Harm Was Directed Into the State of Arizona.

The Plaintiff has missed the train in applying the purposeful availment test, completely failing to even to address relevant elements of the inquiry relating to Arizona. The Plaintiff does not address how the Defendant's activities were (1)

---

[2]Not only are the Plaintiff's repeated assertions of widespread infringement relating to third-party owners of intellectual property unsupported by any actual facts, but its use of the train analogy completely misinterprets the way information is actually stored and displayed on the World Wide Web. A domain name does not store any content displayed on the Internet. It is simply a name that points to a particular numbered IP address (it is much easier to remember Google.com then 192.168.110.5). When the user inputs a domain name, it calls up the IP address. In turn, the content for that IP address, which is stored on a host server, is directed to the user's web browser. In its Opposition, by using its extensive "source code" analysis based on the Declaration of Trey A. Rothel, the Plaintiff misleadingly and possibly intentionally misrepresents to the court that the alleged infringing videos were "hosted" or "stored" on the Arizona-registered domains, while in reality the alleged infringing videos are stored on a physical server located in Europe and the GoDaddy domains only direct traffic to the European servers. Therefore, using the Plaintiff's colorful analogy, it would be more accurate to say that a domain, if it is registered in Arizona, is simply a sign that says, "Your videos are located in Europe (the location of the hosting companies in this action), you can take this train to visit them." *See* (How Does the Internet Work, Exhibit D).

"expressly aimed" at Arizona, and (2) how the Defendant caused harm that it knew would be felt in Arizona.

The Plaintiff does not address these elements because the Plaintiff is aware that it cannot carry its burden. There are no allegations in the Complaint, nor in its Opposition, that would support that the Defendant has specifically targeted Arizona.

Indeed, it is not possible for the harm to be felt in Arizona because a corporation suffers harm "where the corporation has its principal place of business." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir.2002). Here, the Plaintiff has no connections to Arizona whatsoever. The Plaintiff's only relationship to Arizona is its counsel's preference to litigate there. The Plaintiff is an LLC, based in Nevada. As a result, the Plaintiff is left standing at the station and has not made a prima facie case for jurisdiction in Arizona.

## III.   The Plaintiff Cannot Satisfy the Purposeful Direction Test Under Fed. R. Civ. P. 4(k)(2).

In the alternative, the Plaintiff argues that jurisdiction is proper under Fed. R. Civ. P. 4(k)(2) based on the contacts Eporner.com has with the U.S.[3] Under this rule, a Defendant may be subject to jurisdiction if it has sufficient contacts with the U.S. as a whole. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir.

---

[3]With regard to Eprncdn.com, the Plaintiff now alleges that these domains acted as merely a content delivery provider for Eporner.com (again content is stored on the hosts of these domains, not the domains themselves). "[A]ll of the videos associated with the Eporner website loaded from the <eprncdn.com> domain name, not Eporner.com>." (Dkt. No. 30, at 5). There is still no allegation that users actually browsed the domain. Taking this as true, this domain is completely passive with respect to users. It merely responds to queries from the main Eporner.com site. There are no allegations with respect to Epornergay.com whatsoever.

REPLY TO MOTION TO DISMISS AND RESPONSE TO ORDER TO SHOW CAUSE

2007). Though the jurisdictional framework is the same, the Ninth Circuit has intimated that the required minimum contacts need to be more extensive. *See id.* at 456.

Specifically, *Holland* states that "[t]he Ninth Circuit has emphasized the fact that since Rule 4(k)(2) was enacted, that court has never had a case in which the facts have supported jurisdiction under the rule and the few cases in which other circuits have concluded that Rule 4(k)(2) conferred jurisdiction have involved defendants with much more extensive contacts to this country." *Id.* at 462. The examples of sufficient contacts in *Holland* include Defendants planning "numerous conspiracies to bomb the World Trade Center," and an insurer who "insured hundreds of claims in the United States."

The nature and extent of the contacts asserted by the Plaintiff here does not come close to these examples. Regardless of the standard, the Plaintiff does not meet its burden of establishing a prima facie case for jurisdiction under the rule. Again, the only connection that the Defendant has with the United States is the fact that he signed an agreement and registered two proxy domains with GoDaddy, an Arizona company. If Arizona's courts do not have personal jurisdiction over him, there is absolutely no basis to conclude that any other state in the nation may be able to confer its jurisdiction based on Rule 4(k)(2).

### a. The Allegations That Wanat "Directed His Activities Towards the United States" Are Merely Conclusory and Not Supported by Any Evidence.

The Plaintiff relies on conclusory allegations that Wanat was aware of and even uploaded the alleged infringing videos himself. There is no credible evidence to support

REPLY TO MOTION TO DISMISS AND RESPONSE TO ORDER TO SHOW CAUSE

these allegations, and conclusory allegations cannot form the basis for jurisdiction. The Plaintiff ignores the reality of sites that post third-party content, similar to YouTube.com.[4] These sites have a large number of videos posted by third parties. The Plaintiff itself characterizes Eporner.com as a "mega-theatre," (Dkt. No. 10, at 2) and repeatedly opines in its Opposition about the massive infringement operations allegedly carried out by the Defendant. The Plaintiff also readily admits that users anonymously upload videos to the site (*Id.* at 8).

Into this maelstrom, enter Marcin Wanat, an individual who apparently accomplishes more than any ten individuals combined. Wanat allegedly "runs" Eporner.com. (Dkt. No. 30, at 14). However, maintaining a site that has literally "hundreds of thousands if not millions of U.S. visitors" alone, according to the Plaintiff, is not enough to fill the Defendant's day. The Plaintiff appears to contend that Wanat also either uploads or personally screens each and every video to determine if it is in violation of some intellectual property right. (*See id.*, at 13). Part of the screening process apparently consists of Wanat affirmatively looking up any logo or mark that is embedded in any video with the USPTO database to determine where the owner of the mark is located. The absurdity of such allegations is readily apparent to anyone who has

---

[4]YouTube.com is a site, like Eporner.com, that posts numerous third-party videos that are often submitted by anonymous users. *See* YouTube.com. Undoubtedly, of the many millions of videos posted to YouTube.com, there are a significant number that infringe on intellectual property rights to one degree or another. This has been the subject of intense litigation. *See generally Viacom Intern. Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y.2010). YouTube also undoubtedly has generalized knowledge of this. However, YouTube was able to vindicate it rights, relying on the protections of 15 U.S.C. 512 (the "DMCA"). The DMCA provides a notice and take-down procedure for providers of third-party content. *Id.* While those protections may or may not be available to the Defendant here (this is not the subject of this Motion), the rationale behind the DMCA is—namely, that it is unrealistic and unworkable for service providers to be charged with monitoring and screening third-party content. This is why the DMCA requires actual knowledge and shifts this burden of policing infringement to the copyright holder. *See id.*

REPLY TO MOTION TO DISMISS AND RESPONSE TO ORDER TO SHOW CAUSE

visited YouTube.com or similar sites. This Court should not engage in these fantasies while analyzing jurisdictional issues.

### b. Eporner.com Does Not Direct Activities Towards the United States.

In addition to alleging that Wanat himself knew or uploaded infringing content to Eporner.com, the Plaintiff also attempts to justify the exercise of jurisdiction on the basis of the site's alleged contacts with the United States. Primarily this assertion is based on the number of U.S. hits the website allegedly receives. No user interaction occurs, so it is only contacts on Eporner.com that are relevant, and only if Wanat were the actual owner/registrant of the site, which he denies. However, even if the Court were to assume Wanat was the registrant, jurisdiction is improper.

While website "hits" are relevant to the inquiry of express aiming, required for purposeful direction, courts look beyond the mere statistics to determine whether a site is expressly aimed at a forum. *See Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011). There must be additional evidence that the Defendant "continuously and deliberately exploited" the forum. *Id.*

In *Marvix*, relied upon by the Plaintiff, the Court wrestled with exercising California jurisdiction over a foreign defendant. A substantial amount of the Defendant's website hits came from California. *Id.* However, in exercising jurisdiction, the Court found these hits were significant only in light of the nature of the defendant's contact with the forum. *Id.* Namely, the defendant operated a website "with a specific focus on the California-centered celebrity and entertainment industries." Moreover,

REPLY TO MOTION TO DISMISS AND RESPONSE TO ORDER TO SHOW CAUSE

advertisements on the site were specifically directed at residents. *Id.* As a result, there was every indication that California was continuously and deliberately exploited for the defendant's benefit. *Id.*

In contrast, the facts here suggest no such deliberate and continuous exploitation of the U.S. market. By the Plaintiff's own admission, at least 84% of the users who visit the Eporner.com site are not residents of the U.S., let alone Arizona (Dkt. No. 30, at 15). Even those figures are dubious at best, as there is no way to determine if the Alexa statistics relied upon by the Plaintiff, which have been widely criticized for their accuracy, are even representative of the visitors to the site.[5]

More importantly, the site does not have a "specific focus" on the U.S. market like in *Marvix.* Unlike the California celebrity and entertainment industry, there is no particular connection between the U.S. and pornographic material. In addition, there are no allegations on the part of the Plaintiff that any advertising is targeted to U.S. consumers.

The additional facts alleged by the Plaintiff and the conclusory inferences that Plaintiff seeks to draw from them are similarly unconvincing. Specifically, the Plaintiff wishes the Court to believe that the U.S. was targeted based on the following allegations: (1) the site is published in English, (2) the site pays affiliates in U.S. dollars, and (3) the site dares to utter the words "United States" in its user guidelines.

---

[5] Alexa bases its statistics only on users who have installed their web browsing "toolbar." Many commentators dispute that these statistics have any relation to actual traffic and are reliable. *See* "How Does Alexa Work," Exhibit C. *See also, Why You Shouldn't Use Alexa Traffic Statistics* at http://www.realskeptic.com/2013/08/12/why-you-shouldnt-use-alexa-traffic-statistics/

REPLY TO MOTION TO DISMISS AND RESPONSE TO ORDER TO SHOW CAUSE

The reasons these allegations are insufficient are obvious. First, English (as evidenced by the name) is not unique to the U.S. In fact it is one of the most, if not the most, common languages spoken in Europe. (Exhibit D). Thus a site operator wishing to attract European visitors from multiple countries would choose English. Similarly, the U.S. dollar is one of the most common and stable currencies in the world. (Exhibit E). Moreover, it is very possible that the affiliate program is actually operated by a third-party vendor that has chosen to use U.S. dollars. (Exhibit F). Finally, the notion that express aiming would occur on the basis of the mere mention of the forum in a legal clause, which was likely copied from some other source—as is so often the case with legal clauses—simply does comport with the principles of fairness and due process.

As argued in the initial motion to dismiss, the Plaintiff also still fails to meet the remaining elements of the jurisdictional analysis. Namely, that beyond general conclusory allegations that the Defendant was "willfully ignorant" of the Plaintiff's works, or that he "should have" known of the existence of the Plaintiff, there is simply no credible evidence to suggest that the Defendant had any knowledge of the identity of the Plaintiff at the time of the alleged infringement, or that the Defendant's contacts with the forum are the "but for" cause of the action.

## CONCLUSION

Based on the foregoing, as well as the Defendant's Motion to Dismiss, Defendant Marcin Wanat respectfully requests that this Court dismiss the Plaintiff's Complaint against him for lack of personal jurisdiction, and in accordance with the Plaintiff's

REPLY TO MOTION TO DISMISS AND RESPONSE TO ORDER TO SHOW CAUSE

dismissal, dissolve the TRO, and deny the Plaintiff's Motion for Injunctive Relief.

DATED this 11th day of December 2015.

**Donath & Medrala, Prof. LLC**

/s/ Jakub P. Medrala

_____

**JAKUB P. MEDRALA, ESQ.**
1091 S. Cimarron Road, Suite #A-1
Las Vegas, Nevada 89145
(702) 475-8884
(702) 938-8625 Facsimile
*Attorneys for Defendant Marcin Wanat*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 11th day of December, 2015, I served a true and correct copy of the foregoing DEFENDANT MARCIN WANAT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION through the United States District Court CM/ECF, addressed to the following, or if necessary, by U.S. mail with first-class postage prepaid, or, if possible to the following:

Marc J. Randazza,
Randazza Legal Group, PLLC
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
marc@randazza.com
ecf@randazza.com

By: /s/ Jakub P. Medrala

_____

An employee of Donath & Medrala, PLLC

REPLY TO MOTION TO DISMISS AND RESPONSE TO ORDER TO SHOW CAUSE